IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**BOBBY DEWAYNE PRESLEY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Coffee County**
**No. 41280     L. Craig Johnson, Judge**
_____

**No. M2015-00520-CCA-R3-PC – Filed March 3, 2017**
_____

Petitioner sought post-conviction relief alleging that trial counsel's ineffectiveness prevented him from seeking a direct appeal. The post-conviction court denied relief after a hearing, finding that Petitioner failed to show he was prejudiced by trial counsel's actions. We determine that the record does not preponderate against the findings of the post-conviction court. Therefore, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J. joined. NORMA MCGEE OGLE, J., filed a separate dissenting opinion.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Bobby Dewayne Presley.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Craig Northcott, District Attorney General; and Jason Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The procedural history of this case spans nearly twenty-one years and is mystifying. In our review of the record, there appear to be several unanswered questions. Despite the lengthy history, a recitation of the chronology is necessary to untangle the issues on appeal.

In May of 1995, an order was entered declaring Petitioner to be a habitual motor vehicle offender ("HMVO"). In March of 1999, Petitioner pled guilty to driving in

violation of the HMVO order. In 2002, Petitioner attempted to set aside the 1995 HMVO order. The motion was denied, and Petitioner did not appeal that decision to this Court.

In January of 2010, Petitioner was indicted for the offenses which eventually led to this appeal.[1] These charges included: violation of the HMVO order, three counts of reckless endangerment, disorderly conduct, resisting arrest, and vandalism. The affidavit of complaint stated that police were called to a residence in response to a reckless driving call after Petitioner drove his truck through a yard where seven young children were playing. Petitioner nearly missed a five-year-old, six-year-old, and seven-year-old. Petitioner apparently lost control of the vehicle while trying to get out of the yard. When he tried to back up, he almost struck the children again. When officers arrived and spoke with the victims, Petitioner came out of his residence and started yelling and cursing. Petitioner was asked to stop; Petitioner did not stop but became "belligerent and combative and physically resisted arrest by refusing to put his hands behind his back and physically trying to pull away."

In March of 2010, for unspecified reasons, Petitioner's mother, Evelyn Smith, was appointed as power of attorney for Petitioner. After the jury trial, Petitioner was found guilty of violating the HMVO order, misdemeanor reckless endangerment, disorderly conduct, and resisting arrest. At his February 2011 sentencing hearing, the presentence report revealed an extensive criminal history. Petitioner's convictions began in 1983, when Petitioner was thirteen years of age, and culminating with the current offenses. At the time of the arrest for these offenses, Petitioner was on bond pending the imposition of an effective five-year sentence in two other cases which resulted in one conviction for possession of schedule VI drugs and two convictions for reckless aggravated assault.

At the conclusion of the sentencing hearing, Petitioner was determined to be a career offender. The trial court enhanced the sentence based on the application of several enhancement factors and ordered consecutive sentencing on the basis that Petitioner committed a felony while on bail. As a result, Petitioner was sentenced to six years for violation of the HMVO order, eleven months and twenty-nine days for reckless endangerment, thirty days for disorderly conduct, and six months for resisting arrest. The offenses were ordered to be served consecutively to each other and consecutively to the sentence for which he was on bail at the time of the offenses.

---

[1] The majority of these facts were taken from this Court's record on direct appeal. *State v. Bobby Dewayne Presley*, M-2011-02716-CCA-R3-CD. We take judicial notice of that record. Tenn. R. App. P. 13(c); *see also State ex rel. Wilkerson v. Bomar*, 376 S.W.2d 451, 453 (Tenn. 1964) ("This court may, of course, take judicial notice of facts in an earlier proceeding of the same case and the final action of the court thereon."); *Givens v. State*, 702 S.W.2d 578, 579 (Tenn. Crim. App. 1985).

On the same day as the sentencing hearing, Petitioner filed a motion to again vacate the 1995 HMVO order. The motion alleged that the petition from 1995 incorrectly stated the offense for which he was arrested and the date of the offense. Petitioner alleged that if the correct date and offense had been set forth in the petition, he would not have qualified as an HMVO at the time of the original petition. The trial court denied the motion after a hearing. The trial court found that Petitioner was served with the petition, did not attend the hearing, and had already attempted unsuccessfully to collaterally attack his status as an HMVO in 2002.

On September 6, 2011, trial counsel filed a notice of appeal. As of March 1, 2012, the transcript had not been filed and trial counsel had not yet filed a brief in this Court. This Court issued an order to show cause directing trial counsel to inform the court why he should not be held in contempt for failure to timely file a brief. Subsequently, trial counsel filed a motion to supplement the record with the transcripts of the trial, sentencing hearing, and motion for new trial. This Court granted the motion on March 28, 2012.

On August 31, 2012, an emergency motion to substitute counsel was filed. On October 18, 2012, trial counsel was removed as counsel of record and replaced with appellate counsel.[2] On December 14, 2012, appellate counsel filed a motion to correct or modify the record in the direct appeal with a complete transcript of the trial proceedings.

Although the timing is not entirely clear, at some point during the pendency of the appeal, Petitioner filed a complaint against trial counsel with the Board of Professional Responsibility. Trial counsel responded to the complaint by letter in March of 2013. Appellate counsel received a copy of the letter. In the letter, trial counsel explained various things that happened during the pendency of the appeal to thwart his efforts to represent Petitioner. First, trial counsel explained that he attempted to obtain the transcript of the trial but was informed by the court reporter in April of 2012 that the equipment had malfunctioned and she would not be able to provide a transcript. The court reporter supplied an affidavit explaining that the transcript was not available. In July of 2012, trial counsel suffered a heat stroke. In August of 2012, trial counsel was forced to vacate the building in which his law office was housed. Trial counsel started operating out of his personal residence and moved a large portion of the items associated with his law practice into storage. During the move, trial counsel aggravated a back injury. Somehow, current client files got moved into storage by the movers. At the time trial counsel answered the complaint, he was unable to locate Petitioner's file. Trial counsel claimed that he had not been contacted by appellate counsel about the case. Trial counsel noted that he contacted appellate counsel and sent him a copy of the court

---

[2] Substitute trial counsel continues to represent Petitioner in this matter.

reporter's letter and affidavit as well as a copy of the response to the complaint filed by Petitioner. Further, trial counsel explained that, in his opinion, Petitioner's mother, Ms. Smith, was confused about Petitioner's status as an HMVO but that any irregularities in the dates on the order made the order voidable rather than void.

Between December of 2012 and September of 2013, Petitioner's direct appeal essentially remained stagnant. Trial counsel was replaced with appellate counsel but a transcript of the trial remained unfiled. On March 19, 2013, this Court filed an order noting that the supplemental record had not yet been filed. This Court ordered Petitioner to either file the supplemental record or notify the Court about difficulty experienced with the filing of the supplemental record within ten days.

On September 18, 2013, nearly six months later, this Court entered an order noting that the supplemental record of the transcript of the trial had not been filed because the court reporter was unable to transcribe the trial due to technical problems. This Court remanded the matter to the trial court to determine if a transcript of the trial could be produced. If no transcript could be produced, the court ordered the trial court to "follow the procedure outlined in Rule 24(c) for creating a statement of the evidence." This Court also directed the trial court to enter a written order if there was "any difficulty in creating a statement of the evidence."

It is unclear if the trial court ever ascertained the status of a transcript or statement of the evidence because on December 2, 2013, Petitioner filed a motion to voluntarily dismiss the direct appeal. The motion was filed through Defendant's mother, Ms. Smith, who retained power of attorney over Petitioner. On December 27, 2013, the direct appeal was dismissed.

On June 6, 2014, Petitioner filed a petition for post-conviction relief. In the petition, he alleged that trial counsel was per se ineffective in his defense for failure to preserve the record, failure to cooperate with appellate counsel, and failure to prepare a statement of the evidence in the absence of a transcript.

At the hearing on the post-conviction petition, Ms. Smith testified that she was Petitioner's mother and that she possessed power of attorney for Petitioner. She was responsible for retaining trial counsel to represent Petitioner.[3] After Petitioner was convicted, she retained trial counsel for appeal purposes. Ms. Smith testified that she spoke with trial counsel about three weeks after the appeal was filed and then again probably about once a month for the next few months. Several months after the appeal

---

[3] Interestingly, the direct appeal record indicates that Petitioner was determined to be indigent. However, both trial counsel and appellate counsel were retained by Petitioner's mother.

was filed, Ms. Smith went to trial counsel's office to discuss the appeal and found the office "empty." She had not been notified by trial counsel that the office was being relocated. Ms. Smith "kept trying to call" but was unable to get in touch with trial counsel. Ms. Smith eventually spoke with trial counsel's wife who informed her that Petitioner's files were "locked away, and she would have to dig through a lot of stuff to find them."

Petitioner testified at the hearing on the post-conviction petition, albeit briefly. He claimed that he did not speak with, receive visits from, or receive documents from trial counsel during the pendency of the direct appeal. Petitioner could not recall if he testified at trial, then claimed he "testified [he] wasn't driving." Petitioner admitted there were "probably some, but [he didn't] remember who because there was a bunch of people" who testified that he was not driving.

Trial counsel testified that, at the time of the hearing in December of 2014, he had been licensed to practice law for thirty-three years. He complained of back, leg, and hip problems. To deal with those health problems, trial counsel took pain medication including hydrocodone and Percoset. Trial counsel also took meloxicam for arthritis and muscle relaxers. Trial counsel admitted that he had taken pain medication "off and on since '75" but that "in the last three years, [he had taken the medication] almost every day."

Trial counsel handled numerous matters for Petitioner, including filing the notice of appeal for the direct appeal from Petitioner's convictions and ordering a transcript. Trial counsel was made aware of the fact that no transcript had been filed when he received a notice from the Court of Criminal Appeals. Trial counsel got in touch with the court reporter and learned that a glitch in the system prevented retrieval of the materials in Petitioner's trial. Trial counsel received an affidavit from the court reporter stating why she was unable to complete the transcript. Trial counsel tried to get the court reporter to forward the corrupted hard drive to a company that specialized in data retrieval.

Trial counsel testified that he suffered from a heat stroke in July of 2012 and was for "14 months . . . basically unable to do anything." Additionally, trial counsel was forced to vacate his law office in August of 2012. Trial counsel testified that he notified clients and the disciplinary board of his change in address. Trial counsel claimed that he did not receive any additional information about Petitioner's case until he received the emergency substitution of counsel notification. Trial counsel recalled sending an email to appellate counsel in March of 2013. In the email, trial counsel averred that he was going to attempt to send Petitioner's file to appellate counsel. Trial counsel admitted that he later found several boxes of files pertaining to Petitioner but that he had not delivered

them to appellate counsel. Trial counsel admitted that when he realized the court reporting equipment malfunctioned, he could have "prepare[d] a statement of the facts" but that he "chose not to." Trial counsel claimed that he made contact with the former prosecutor, and "he didn't have access to his file because that was with the DA's office" because this particular attorney was no longer part of the district attorney's office. Additionally, trial counsel "couldn't locate" his own files on Petitioner. Trial counsel admitted that there was "no good reason" that he failed to ask for an extension of time. Trial counsel also admitted that he "just wasn't able to" specifically notify the Court of Criminal Appeals of the problems. However, trial counsel was unaware that the Court of Criminal Appeals had remanded the case to the trial court for the preparation of a statement of the evidence because, by that time, he had already been removed from representation of Petitioner. Trial counsel testified that he was never contacted by appellate counsel, the district attorney's office, or the trial judge to assist in the preparation of a statement of the evidence.

To add to the quirkiness, post-conviction counsel (now appellate counsel), called himself as a witness at the post-conviction hearing.[4] Appellate counsel testified that he attempted to contact trial counsel repeatedly by telephone. Appellate counsel also attempted to contact trial counsel via email. Appellate counsel admitted that he filed the emergency substitution motion in August of 2012 and the case was remanded to the trial court in September of 2013 and that he only attempted to contact trial counsel by telephone during that year. He received one email and one telephone call from trial counsel in 2013. These both occurred prior to the March 2013 letter that trial counsel sent in response to the complaint filed with the Board of Professional Responsibility. Appellate counsel also admitted that he never contacted the trial judge's office about the preparation of a statement of the evidence and did not pursue data recovery options for the corrupted hard drive. Appellate counsel testified that he was forced to make a "tactical move" to dismiss the appeal because there was "absolutely no ability to present a statement of the evidence to preserve the evidence."

After hearing the testimony at the post-conviction hearing, the post-conviction court issued a written order detailing the convoluted procedural history of the case. The post-conviction court determined that the "evidence shows [trial counsel] failed to file a brief or move for an enlargement of time to file the brief because of various health-related issues and the failure of communication with [Petitioner] and his mother." The court noted that trial counsel filed a motion to supplement the record but was unable to find files due to a change in office locations. This led to a failure to deliver the files to

---

[4] Such conduct is forbidden by the Rules of Professional Conduct unless it is necessary for four narrowly limited purposes, none of which are shown in the record. (Tenn. Sup. Ct. R. 8, RDC 3.7)

appellate counsel. In the post-conviction court's assessment, trial counsel "did all he could [for Petitioner] under the circumstances." In the post-conviction court's opinion, appellate counsel voluntarily dismissed the appeal as a "tactical move" without applying to the court for additional time to prepare a statement of the evidence. The post-conviction court further determined that appellate counsel failed to "exhaust the procedures afforded by the rules" and "failed to convince the [c]ourt that his appeal would have been successful without the stated problems." In other words, Petitioner failed to show prejudice. As a result of those findings, the post-conviction court denied relief.

Petitioner appealed. After briefs were filed, counsel for Petitioner moved this Court to remand the matter to the trial court to determine whether Petitioner waived any potential conflict of interest with the continued representation by appellate counsel based on an argument raised by the State. This Court granted that request, directing the trial court to hold a hearing in order to determine whether Petitioner waived any conflict of interest with the continued representation of current counsel. *See Frazier v. State*, 303 S.W.3d 674 (Tenn. 2010).

At the July 20, 2016 hearing on remand, there was a transport order for Petitioner to appear at the hearing but, for unknown reasons, Petitioner was not present. Ms. Smith testified that she still retained power of attorney for Petitioner. Ms. Smith testified that she waived any conflict with appellate counsel.

On appeal from the denial of post-conviction relief, Petitioner argues that he suffered "manifest injustice and deprivation of Due Process" when trial counsel abandoned Petitioner and the trial court failed to preserve a record. Petitioner also argues that the post-conviction court erred by determining that Petitioner was not entitled to relief because he was "unable to show the likelihood he would have prevailed on the initial appeal." Lastly, Petitioner takes issue with the post-conviction court's determination that by dismissing the direct appeal, Petitioner failed to pursue other remedies.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or

substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result, *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

To be clear, Petitioner is attacking the effectiveness of his trial counsel. Petitioner alleges that the failure to have his direct appeal heard was the result of abandonment by trial counsel, who failed to secure a transcript of the trial and failed to withdraw from representation. From the record before this Court, we can glean the following. Trial counsel timely filed the notice of appeal. The initial appellate record was first filed in December of 2011 and did not contain transcripts or a statement of the evidence. This Court eventually entered a show cause order. It appears that trial counsel attempted to remedy his failure to file a brief by seeking an extension of time and a motion to supplement the record, both granted by this Court in March of 2012. A supplemental record was filed in May but it still did not contain transcripts or a statement of the evidence. This Court notified trial counsel for a second time on June 14, 2012, that a brief had not yet been filed. A motion to substitute appellate counsel was filed in August of 2012. The motion was granted.

In our view, if no other evidence were presented to the post-conviction court, trial counsel's failure to secure a transcript and failure to withdraw from representation standing alone would almost certainly be considered deficient. Petitioner was, until late 2012, still represented by trial counsel, and trial counsel was in the best position to

prepare a statement of the evidence after discovering that the transcript was unavailable. However, the proof at the hearing indicates that trial counsel suffered from multiple health problems, was forced to relocate his office and files, and filed several motions on behalf of Petitioner while the case was pending on appeal. The post-conviction court did not find trial counsel to be deficient, stating instead that trial counsel "did all he could under the circumstances." The record does not preponderate against the judgment of the post-conviction court.

Trial counsel was replaced by appellate counsel around the end of August of 2012. Appellate counsel was on notice that there was no trial transcript and that a statement of the evidence was necessary. Appellate counsel complained that trial counsel did not "cooperate" with him. However, at the post-conviction hearing, trial counsel testified that Petitioner never sought his assistance in preparing the statement. Further, Petitioner never attempted to contact the former district attorney or trial judge. Instead, in a "tactical move" approved by Petitioner's mother, appellate counsel for Petitioner chose to voluntarily dismiss the appeal. The post-conviction court concluded that Petitioner "failed to exhaust the procedures afforded by [Rule 24 of the Tennessee Rules of Appellate Procedure]." Additionally, the post-conviction court noted that Petitioner failed to prove prejudice by "convin[cing] the court that his appeal would have been successful without the stated problems." The evidence in the record does not preponderate against the post-conviction court's conclusion with respect to trial counsel. Petitioner repeatedly failed to comply with this Court's orders to supplement the direct appeal record with a transcript of statement of the evidence—whether through trial counsel or appellate counsel. Petitioner failed to prove that his direct appeal was thwarted due to the ineffectiveness of trial counsel alone.[5]

In a related argument, Petitioner claims that the failure of trial counsel along with the trial court to prepare a statement of the evidence deprived him of due process of law such that he was prevented from perfecting an appeal. We disagree.

There is no constitutional right to appeal, but where appellate review is provided by statute, the proceedings must comport with constitutional standards. *State v. Gillespie*, 898 S.W.2d 738, 741 (Tenn. Crim. App. 1994) (citations omitted). In Tennessee, a

---

[5] Because Petitioner's mother, acting as power of attorney, waived any conflict of interest with regard to appellate counsel's continued representation of Petition as post-conviction counsel, and because Petitioner has not raised any claims with respect to ineffective assistance against appellate counsel, we will not comment on his representation of Petitioner. We caution defendants in general from waiving a conflict of interest in post-conviction matters where post-conviction counsel was also involved in the trial or direct appeal, as Tennessee Code Annotated section 40-30-102(c) "contemplates the filing of only one (1) petition for post-conviction relief [and] [i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment."

criminal defendant has the right to one level of appellate review. Tenn. R. App. P. 3(b) (2003); *Collins v. State*, 670 S.W.2d 219, 221 (Tenn. 1984). The law, however, "does not require an appeal of a conviction in a criminal case in the event the defendant, for reasons satisfactory to himself, desires not to have such an appeal." *Collins*, 670 S.W.2d at 221; *see also Serrano v. State*, 133 S.W.3d 599, 604 (Tenn. 2004) (holding that a defendant's written waiver of direct appeal did not preclude filing of a petition for post-conviction relief but was sufficient to waive right to direct appeal). Thus, a defendant may waive his right to appeal. In this case, Petitioner's direct appeal was pending when he chose to voluntarily dismiss the case. He cannot now complain that he was denied due process of law. Petitioner was not denied full and fair opportunity to litigate his claims but rather voluntarily relinquished them. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE